Dorman Henry STAMPER, 703 Oakland Street Urbana, Ohio 43078, Plaintiff,

v.

Mary A. STAMPER, 1747 River Road Urbana, Ohio 43078, Defendant.

In the Matter of Dorman Henry STAMPER, Debtor.

Bankruptcy No. 3–81–02185. Adv. No. 3–81–0648.

United States Bankruptcy Court, S. D. Ohio, W. D.

Jan. 18, 1982.

James Griffin, Springfield, Ohio, for plaintiff.

Darrell L. Heckman and Robert M. Strapp, Urbana, Ohio, for defendant.

Carl E. Juergens, Springfield, Ohio, trustee.

## DECISION

CHARLES A. ANDERSON, Bankruptcy Judge.

### PRELIMINARY PROCEDURE

This case is before the Court upon a complaint filed 25 September 1981 by Dorman Henry Stamper vs. Mary A. Stamper seeking a judgment for contempt of court; the answer and counterclaim filed in behalf of Mary A. Stamper on 19 October 1981 seeking a determination of nondischargeability; and the evidence as stipulated at the pretrial hearing held on 6 November 1981.

### STATEMENT OF FACTS

Dorman Henry Stamper filed a voluntary petition in bankruptcy on 5 August 1981. The Defendant, Mary A. Stamper, first received notice of filing of the petition from a creditor, City Loan and Savings Company, which was listed as a creditor in the schedules.

Previous to the petition in bankruptcy the parties had been married, which marriage had been dissolved by the Common Pleas Court of Champagne County, Ohio, on

20 November 1980. The decree of dissolution of marriage incorporated a separation agreement executed by the parties previously on 11 October 1980.

No children were born issue of said marriage, necessitating no need for any award of custody and support. The agreement did provide that Mary would receive as her sole property a 1970 Rambler automobile and stereo. The Plaintiff and husband agreed to "pay for the same holding the wife harmless thereon." The husband by the agreement was to receive as his sole property a 1978 Nova automobile and a television set, for which he also agreed to hold Mary harmless from any indebtedness. As a part of the same provision, each party agreed to "retain the personal property they each owned before the marriage." At the time of the separation agreement, there was due on the Rambler auto and stereo granted to the wife a debt to City Loan and Savings Company. At the time of the dissolution of the marriage the parties owned no real estate. Mr. Stamper was employed, netting approximately $180.00 per week. Mrs. Stamper was not gainfully employed at the time, and would use the 1970 Rambler to seek employment and for travel to such employment since no public transportation is available in the rural setting where she resides.

The separation agreement as incorporated by reference in the Decree of Dissolution also stipulated that, "This Agreement shall be a full and complete settlement of all alimony and property rights between the parties, each of whom does by the provisions hereof, release, satisfy and discharge all claims and demands against the other . . . ."

On 28 August 1981 Mary A. Stamper filed a motion in the Common Pleas Court to have Dorman Henry Stamper found in contempt of court and punished for failure to pay the debt to City Loan and Savings Company on the stereo and the Rambler automobile. The respondent pleaded the pending bankruptcy case as a defense. By journal entry on 8 September 1981, the Common Pleas Court found Dorman in contempt of court. At this time he offered to make regular payments, beginning October 12, 1981, and monthly thereafter, to induce the state court to withhold sentencing in contempt.

Although the Plaintiff did not list Mary as a creditor in his original schedules, he did file an amendment to the schedules on 29 September 1981, listing her as a creditor. Previous to receiving notice on the amendment, Mary had actual knowledge of the filing of the bankruptcy petition, although she claims that she did not have knowledge of any "injunction" prohibiting her from proceeding with the state court contempt action.

## OPINION

There is no question that Defendant, Mary A. Stamper, did in fact have personal knowledge of the bankruptcy case before she instituted contempt proceedings in the state court having jurisdiction over the domestic relations. There also can be no doubt that the state court had continuing jurisdiction to enforce its decree by contempt action. Furthermore, in the contempt proceeding, Dorman H. Stamper, Plaintiff herein, (and also in the state court), asserted the pending bankruptcy case. The pending bankruptcy case was not before Judge Wilson. The effect was obviated without judicial determination when he summarily found that Dorman was in contempt for not making payments to City Loan as required. Obviously, as would be viewed by Judge Wilson, even an attempt to avoid his decree by seeking a discharge thereof in bankruptcy could be considered as contempt of court.

At this juncture, Plaintiff acceded to the state court order, to avoid a sentencing, and proceeded immediately for a determination of the issues of dischargeability in this court. The legal questions implicit from the facts are involved in three other cases now pending before this Court, being increasingly troublesome to litigants, attorneys, and domestic relations court judges, all of whom are seeking definitive solutions.

Inasmuch as the state court judge clearly retains jurisdiction over the domestic relations aspects of the case and over the enforcement of his decrees, the instant controversy concerns only the litigants and not the contempt order of Judge Wilson. Traditional abstention from divorce court litigation in federal courts has been previously discussed by this court and need not be now further labored, despite the apparently all-inclusive statutory jurisdictional grant to bankruptcy courts.

I

The first issue from the facts is the effect of a state court's finding in contempt for failure to make payments conformably to its decree, as it affects the dischargeability of debts by the bankruptcy court.

The basic sections of the United States Code bearing analysis are 11 U.S.C. § 523 (exceptions to discharge) and 28 U.S.C. § 1471 (jurisdiction).

Section 523 supersedes § 17 of the Bankruptcy Act (11 U.S.C. § 35) in specifying which debts are not discharged in a bankruptcy case. The jurisdictional clause incorporated into Section 17, delineating whether the bankruptcy courts exercised exclusive or concurrent jurisdiction with other courts, was not included in Section 523 because, as explained by the House Committee Report, "The provision in Bankruptcy Act § 17a granting the bankruptcy courts jurisdiction to determine dischargeability is deleted as unnecessary, in view of the comprehensive grant of jurisdiction prescribed in proposed 28 U.S.C. § 1471(b) which is adequate to cover the full jurisdiction that the bankruptcy courts have today over dischargeability and related issues under Bankruptcy Act § 17." H.R.Rep.No. 95–595, 95th Cong., 1st Sess. ¶ 363 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6319.

Under 28 U.S.C. § 1471(b), bankruptcy courts have "original but not exclusive jurisdiction of all civil proceedings arising under Title 11 or arising in or related to cases under Title 11." The legislative history, unfortunately, glosses over the effect of

Section 28 U.S.C. § 1471(a) as it pertains to exceptions to discharge. Based upon the rationale to be discussed from case precedents, it might be postulated that the effect of a discharge in bankruptcy falls under the exclusive jurisdiction over "cases under Title 11." The following rationale, however, pertains to 11 U.S.C. § 1471(b).

■ As often reiterated by court decisions, "what constitutes alimony, maintenance, or support, will be determined under the bankruptcy laws, not state law. Thus, cases such as *In re Waller, 494 F.2d 447 (6th Cir. 1974)*; Hearings, pt. 3, at 1308–10, are overruled, and the result in cases such as *Fife v. Fife, 1 Utah 2d 281, 265 P.2d 642 (1952)* is followed. This provision will, however, make nondischargeable any debts resulting from an agreement by the debtor to hold the debtor's spouse harmless on joint debts, to the extent that the agreement is in payment of alimony, maintenance, or support of the spouse, as determined under bankruptcy law considerations that are similar to considerations of whether a particular agreement to pay money to a spouse is actually alimony or a property settlement." H.R.Rep.No.95–595, p. 364, U.S.Code Cong. & Admin.News 1978, p. 6320.

Following the principles enunciated in *Brown v. Felsen, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979)* this Court has previously decided that the principles of *res judicata* do not apply in dischargeability litigation in general, and that the doctrine of collateral estoppel should not be treated any differently following *In Re Day, 4 B.R. 750, 754 (1980)*. See *Cumis Insurance Society, Inc. v. Sneed, 13 B.R. 151 (Bkrtcy.S.D.Ohio 1981)*. The same rationale was followed *In The Matter of Sturgell, 7 B.R. 59 (Bkrtcy. 1980)* as to alimony awards. See, also, *In Re Williams, 3 B.R. 401, 6 B.C.C.2d 341, 1 C.B.D. 1086 (Bkrtcy. 1980)* following the rationale of *Brown v. Felsen* and *contra, In Re Peterman, 5 B.R. 687, 6 B.C.D. 851, 2 C.B.C.2d 1048 (Bkrtcy.1980)*.

■ Since the question of dischargeability is not before the state court in summary contempt proceedings, and when litigated is

a question of federal bankruptcy law, the "concurrent jurisdiction" of non-bankruptcy courts is not involved as a practical matter.

■ Even beyond the effects of extreme practicality as to concurrent jurisdiction under Section 1471(b) nevertheless, is the effect of 11 U.S.C. § 362, if the state court determination was not sought prior to the petition in bankruptcy. The bankruptcy court because of the provisions of § 362(a) and § 362(b)(2) has exclusive jurisdiction from 28 U.S.C. § 1471(a) to make the determination whether the automatic stay is operative and, if so, whether relief should be granted therefrom. In this regard, the question would also be litigated under bankruptcy law.

Hence (even though state courts retain jurisdiction to enforce their decrees by contempt proceedings), as a result of the foregoing federal statutes and the teachings of the Supreme Court in *Brown v. Felsen*, it must be concluded that the litigants themselves are precluded from seeking a judgment in the state court, ignoring the effect of the bankruptcy court jurisdiction and discharge, before a timely adjudication in the bankruptcy court.

## II

■ Having concluded that the effect in bankruptcy of the state court decree is a matter within the exclusive purview of federal law and that state court findings are not *res judicata* as to dischargeability, the question of dischargeability will be resolved herein under the rationale of several previous decisions by this Court before and since the adoption of the Bankruptcy Code. See *In the Matter of Sturgell, 7 B.R. 59 (Bkrtcy. 1980)* and the unreported decision in *Tope v. Tope, Case No. 3–80–0400, Adv.No. 3–80– 0148 (1980)* for citations and analyses of such precode decision.

This determination requires primarily a factual determination. In this same vein, we have the benefit of a recent, unreported decision (January 7, 1982) by Judge Perlman, (S.D.Ohio), Case No. 1–81–00993, Adv.No. 1–81–0227, concurring with the *ratio decidendi* in *Sturgell and Tope* that the

language of the state court decree is not conclusive as to whether ordered payments to a spouse constitute alimony but, rather, the intention of the parties controls, "to be deduced from the agreement together with those surrounding circumstances which we are permitted to consider."

The instant case differs from *Sturgell* in that there are no minor children, issue of the marriage, to support, and no family home to maintain, (Two factors always involved in finding alimony and support).

■ The determination of the effects of a separation agreement (and a divorce or dissolution decree) as property settlement or as support and maintenance of one spouse is more obvious if there are dependent children, absence of gainful employment, and a family home to be maintained. See *In Re Maitlen, 658 F.2d 466 (7th Cir. 1981)*. These factors are not present *instanter*, since only "consumer goods" are involved.

One element of need for support does exist; namely, the need for an automobile for defendant to seek employment in the rural area of her residence and for transportation to and from such employment.

■ This court is constrained to conclude and hold that if a party seeks to deny the intent to provide support and maintenance (or alimony) and argues that a decree or agreement is designed strictly as a division of property, the burden of demonstrating the intent does not rest entirely upon the other party, who is seeking a determination of an exception from the discharge. In other words, there must be proof that the converse is true; namely, that a division of property was intended based upon applied values thereof. In the absence of such proof (if any need for support and maintenance has been shown) this Court must assume that the state court decree requiring the payment of a lien or security interest by one party on property distributed to the other satisfies a support and maintenance need, if such exists.

Since there is no evidence adduced to show the economic basis for the *aliquot* shares distributed from the marital assets, it must be assumed that the payment of the security interest on the share taken by the unemployed spouse was intended as temporary support and maintenance. With this rationale the exact working of the separation agreement, as incorporated in the decree, is not ambiguous, because it specifically recites that it "shall be a full and complete settlement of all alimony and property rights between the parties...."

The intention of the parties does extend beyond the purpose of a mere division of property, as demonstrated by the terms of the separation agreement stipulating that periodic payments be made to holders of security interests.

■ In conclusion, therefore, this court finds that defendant, Mary A. Stamper, is in contempt of the bankruptcy court jurisdiction for seeking the contempt of court order in the state court, including imminent incarceration of the debtor, Dorman Henry Stamper, despite knowledge of the bankruptcy court case and before a determination that the obligation is as exception to the Section 362 automatic stay and to the Section 523(a)(5) provisions, both questions of federal law. It is further found, however, that the agreement to pay the security interest on the 1970 Rambler automobile (but not the stereo) on the facts constitutes support and maintenance to the defendant and is an exception to the discharge, pursuant to Section 523(a)(5) of the Bankruptcy Code.

■ Because of the finding of non-dischargeability and the professed ignorance of Defendant as to the automatic stay, sanctions for contempt of court will be deemed mitigated and suspended upon condition that the Plaintiff be partially reimbursed by Defendant for attorney's fees and expenses, in the amount of $250.00.

SO ORDERED.