ORDERED PUBLISHED

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP No.   CC-16-1298-FLKu |
| MELISSA HODA KASHIKAR, | Bk. No.   2:14-bk-23848-ER |
| Debtor. | Adv. No.   2:15-ap-01184-ER |
| MELISSA HODA KASHIKAR, | |
| Appellant, | |
| v. | **O P I N I O N** |
| TURNSTILE CAPITAL MANAGEMENT, LLC, assignee from DB Structured Products, Inc., | |
| Appellee. | |

Submitted without oral argument
on March 23, 2017

Filed – April 28, 2017

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Ernest M. Robles, Bankruptcy Judge, Presiding

Appearances:     M. Jonathan Hayes on the brief for appellant Melissa Hoda Kashikar; Scott S. Weltman on the brief for appellee Turnstile Capital Management, LLC.

Before:   FARIS, LAFFERTY, and KURTZ, Bankruptcy Judges.

FARIS, Bankruptcy Judge:

**INTRODUCTION**

Section 523(a)(8) of the Bankruptcy Code[1] provides that several categories of educational indebtedness are not dischargeable in bankruptcy unless the debtor proves that paying the debt would impose undue hardship on the debtor or her dependents. Chapter 7 debtor Melissa Hoda Kashikar argues that her educational debt owed to Appellee Turnstile Capital Management LLC ("Turnstile") is not covered by § 523(a)(8). The bankruptcy court declined to consider her argument concerning one of the categories of debt and held that her debt was included in the category of an "educational benefit" under § 523(a)(8)(A)(ii). The court erred on both counts. Accordingly, we REVERSE IN PART the court's ruling as to § 523(A)(8)(A)(ii), VACATE the court's ruling as to § 523(a)(8)(A)(i), and REMAND this case to the bankruptcy court.

**FACTUAL BACKGROUND**

Ms. Kashikar attended St. Matthew's University School of Medicine ("SMU") in Grand Cayman, Cayman Islands. In order to fund her education and pay for the costs of attending SMU, Ms. Kashikar signed an application and promissory note with

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

StudentLoan Xpress. Turnstile's predecessor in interest[2] directly disbursed the funds to SMU.

There is no dispute that Ms. Kashikar attended classes at SMU for the purposes of obtaining a degree and learning about medicine. However, Ms. Kashikar did not complete her education at SMU. She returned to the United States, but could not transfer any of her SMU credits.

On July 21, 2014, Ms. Kashikar filed her chapter 7 petition. She scheduled her student loan on Schedule F in the amount of $73,804. She received a standard discharge on or around November 10, 2014.

On April 14, 2015, Ms. Kashikar filed an adversary complaint seeking a determination that the loan (the balance of which had grown to $74,968.74) was discharged under § 523(a)(8). The complaint is very brief. After identifying the parties and describing the loan, it alleges that:

> Since the purpose of the loan(s) in question were not for an, "eligible education institution" as defined by 26 U.S.C. 221(d)(1) and (2), the subject loan(s) are not, "qualified education loan(s)" under 11 U.S.C. 523(a)(8)(B), and therefore not subject to the student loan general exception to discharge found at 11 U.S.C. 523(a)(8). Accordingly, the loan(s) alleged in Paragraph 4 were discharged on November 12, 2014, when Plaintiff/debtor obtained her discharge in the underlying bankruptcy case.

In response to this paragraph of the complaint, Turnstile denied

---

[2] StudentLoan Xpress was the original lender. Deutsche Bank Americas Holding Corp. acquired the promissory note from StudentLoan Xpress. Subsequently, DB Structured Products, Inc. purchased the promissory note. Turnstile purchased the promissory note from DB Structured Products, Inc. For ease of reference, we will collectively refer to these creditors as "Turnstile."

3

that the loan was discharged.

The parties entered into a Pretrial Stipulation for Claims for Relief ("Pretrial Stipulation"). The parties agreed that certain facts were admitted and required no proof, including:

> SMU has never been, and is not now, an "eligible educational institution" as that term is defined under section 481 of the Higher Education Act of 1965 (20 U.S.C. 1088), and has never been, and is not now, eligible to participate in a program under title IV of the Higher Education Act.

The parties further stipulated that no issues of fact remained to be litigated and that:

> The following issues of law, and no others, remain to be litigated:
>
> > Whether or not Plaintiff's student loans were excepted from discharge under 11 U.S.C. § 523(a)(8)?
>
> > **Defendant's Defenses**:
>
> > Can Plaintiff discharge her Student Loans solely under 11 U.S.C. § 523(a)(8)(B), as plead [sic] in the complaint?

The Pretrial Stipulation provided that "this stipulation shall supersede the pleadings and govern the course of trial in this adversary proceeding, unless modified to prevent manifest injustice."

After reviewing the Pretrial Stipulation, the bankruptcy court determined that there were no disputed facts to be litigated and directed the parties to submit briefs explaining why each party was entitled to judgment as a matter of law. The court noted that it treated the Pretrial Stipulation as a pretrial order and said that "the Pretrial Stipulation supersedes the pleadings and governs this action."

4

On July 22, 2016, Ms. Kashikar filed her motion for judgment as a matter of law ("Motion").[3] She contended that her loan did not fall within §§ 523(a)(8)(A)(i), (A)(ii), or (B). Regarding subsection (A)(i), she argued that SMU was not an eligible "governmental unit" as contemplated by the Bankruptcy Code. Regarding subsection (A)(ii), she said that the statute covers only "funds received" directly by the debtor. Because she did not "actually" or "directly" receive any of the loan proceeds (which were paid directly to SMU), she argued that subsection (A)(ii) was not applicable. Regarding subsection (B), she argued that Turnstile conceded that her loan was not a "qualified educational loan" as defined by the Internal Revenue Code.

In response, Turnstile contended that Ms. Kashikar's complaint was deficient under Civil Rule 8 and the pleading standards of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009), and only offered an unsupported legal conclusion concerning § 523(a)(8)(B). It also argued that she did not plead any theory relating to § 523(a)(8)(A) in her complaint and that it was prejudicial for her to raise that argument for the first time in her Motion. In the alternative, it argued that she received an "educational benefit" under § 523(a)(8)(A)(ii) and that the Ninth Circuit has commanded that the statute is to be interpreted broadly.

The bankruptcy court issued its memorandum decision on September 2, 2016. It considered whether Ms. Kashikar's loan

---

[3] The bankruptcy court noted that the Motion should have been styled as a motion for judgment on partial findings under Civil Rule 52.

fell into any of the categories enumerated in § 523(a)(8).

The court said that it would not decide whether § 523(a)(8)(A)(i) covered the loan because the complaint only mentioned § 523(a)(8)(B) and Turnstile had no opportunity to address or produce evidence regarding subsection (A)(i).

However, the court decided to consider § 523(a)(8)(A)(ii) because the facts concerning that subsection were undisputed and Turnstile had an opportunity to fully brief the issues (in connection with subsection (B)). The court extensively examined the conflicting case law and sided with the cases adopting an "expansive reading" of the phrase "educational benefit" in § 523(a)(8)(A)(ii). It held that "a tuition payment made by a third-party lender to a school on behalf of a debtor creates 'an obligation to repay funds received as an educational benefit.'" Accordingly, the court concluded that Ms. Kashikar's loan was excepted from discharge.[4]

The bankruptcy court entered its judgment in favor of Turnstile, and Ms. Kashikar timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

(1) Whether the bankruptcy court erred in holding that Ms. Kashikar's student loan was covered by § 523(a)(8)(A)(ii).

---

[4] Regarding § 523(a)(8)(B), the court stated that the parties agreed that the loan was not a "qualified educational loan" under that subsection.

6

(2) Whether the bankruptcy court erred in declining to decide whether Ms. Kashikar's loan was covered by § 523(a)(8)(A)(i).

**STANDARD OF REVIEW**

"We review de novo the bankruptcy court's application of the legal standard in determining whether a student loan debt is dischargeable." Educ. Credit Mgmt. Corp. v. Jorgensen (In re Jorgensen), 479 B.R. 79, 85 (9th Cir. BAP 2012) (citing Rifino v. United States (In re Rifino), 245 F.3d 1083, 1087 (9th Cir. 2001)). "To the extent the bankruptcy court interpreted statutory law, we review the issues of law de novo." Thorson v. Cal. Student Aid Comm'n (In re Thorson), 195 B.R. 101, 104 (9th Cir. BAP 1996).

De novo review requires that we consider a matter anew, as if no decision had been rendered previously. United States v. Silverman, 861 F.2d 571, 576 (9th Cir. 1988).

**DISCUSSION**

Section 523(a)(8) provides that certain kinds of educational debts are not discharged in bankruptcy unless repayment of the debt would result in undue hardship. This section applies to:

(A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or

(ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or

(B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual.

§ 523(a)(8).

7

We have previously said that § 523(a)(8) excepts four types of educational claims from discharge:

> (1) loans made, insured, or guaranteed by a governmental unit; (2) loans made under any program partially or fully funded by a governmental unit or nonprofit institution; (3) claims for funds received as an educational benefit, scholarship, or stipend; and (4) any "qualified educational loan" as that term is defined in the Internal Revenue Code.

Institute of Imaginal Studies v. Christoff (In re Christoff), 527 B.R. 624, 632 (9th Cir. BAP 2015) (quoting Benson v. Corbin (In re Corbin), 506 B.R. 287, 291 (Bankr. W.D. Wash. 2014)).

Ms. Kashikar did not plead or prove that repayment of the debt would subject her or a dependent to undue hardship. The only issue is whether § 523(a)(8) covers her debt to Turnstile.

**A. The bankruptcy court erred in holding that Ms. Kashikar's loan is excepted from discharge under § 523(a)(8)(A)(ii).**

The bankruptcy court held that Ms. Kashikar's student loan debt was nondischargeable under § 523(a)(8)(A) because the "funds received" constituted an "educational benefit." While we agree that the "funds received" requirement was met, we hold that her student loan was not an "educational benefit" within the meaning of the statute.

**1. Ms. Kashikar's loan constitutes "funds received."**

Ms. Kashikar contends that, because the loan proceeds were disbursed directly to SMU and not to her, her student loan is not included in § 523(a)(8)(A)(ii). We disagree.

Section 523(a)(8)(A)(ii) excepts from discharge "an obligation to repay **funds received** as an educational benefit . . . ." (Emphasis added.) The statute does not specify who must receive the funds.

8

We recently construed this phrase in <u>Christoff</u>. In that case, the debtor applied for admission to a for-profit private university. 527 B.R. at 626. The university offered her $6,000 of financial aid in the form of a tuition credit; she did not receive any money from the university. She signed (1) an agreement that the university was "financing" $6,000 of her tuition and (2) a promissory note in favor of the university in which she promised to repay the financial aid in installments beginning when she either graduated or withdrew from the university. <u>Id.</u> The following year, she executed a similar agreement and promissory note for $5,000. <u>Id.</u>

The debtor withdrew from the university without receiving a degree and defaulted on her payments. <u>Id.</u> She filed a chapter 7 bankruptcy petition, and the university commenced an adversary proceeding seeking a determination that the debt was excepted from discharge under § 523(a)(8). <u>Id.</u> at 626-27. The university argued that the debt was excepted under § 523(a)(8)(A)(ii); the bankruptcy court disagreed, holding that the debt "did not flow from 'funds received' either by her as the student or by [the university] from any other source" and was thus outside the scope of § 523(a)(8)(A)(ii). <u>Id.</u> at 627. It said that the university "simply agreed to be paid the tuition later . . . . It did not receive any funds, such as from a third party financing source." <u>Id.</u>

The university appealed, and we affirmed. Relying on the plain language of the statute, we said that "[t]he phrase 'funds received' has been interpreted by the BAP, in an opinion which was as [sic] adopted by the Ninth Circuit as its own, to require

9

'that a debtor **receive actual funds** in order to obtain a nondischargeable benefit.'" Id. at 633-34 (quoting President of Ohio Univ. v. Hawkins (In re Hawkins), 317 B.R. 104, 112 (9th Cir. BAP 2004), aff'd, 469 F.3d 1316 (9th Cir. 2006)) (emphasis in original). We thus held that the debtor did not receive any funds, and her debt was not excepted from discharge under § 523(a)(8)(A)(ii).

Ms. Kashikar argues that her case is similar to Christoff. She contends that, because the loan proceeds were disbursed directly to SMU, she did not "receive" any "funds." However, Christoff is distinguishable in this respect. In Christoff, the university extended the debtor educational credits. Neither she nor the university received any funds to pay for her education; rather, the university just agreed to be paid at a later date. See id. at 627. In the present case, however, Turnstile, a third party, did disburse funds to SMU. In such a situation, the disbursed funds were "funds received."

We drew this very distinction in Christoff. Citing our previous ruling in Hawkins, we said that § 523(a)(8)(A)(ii) "includes a condition, distinct from those in the other subsections of 523(a)(8), that must be fulfilled. . . . [T]his unique requirement, that 'funds [be] received' by the debtor, mandates that cash be advanced to **or on behalf of the debtor**." Id. at 634 n.9 (emphasis added). Indeed, in Hawkins, we noted that "an educational loan need not include an actual transfer of money or some form of cash equivalent to Debtor . . . ." 317 B.R. at 110. In other words, the statute does not require that the lender pay funds directly to the borrower; the funds may be

10

paid to the educational institution on behalf of the borrower. See also Rizor v. Acapita Educ. Fin. Corp. (In re Rizor), 553 B.R. 144, 150 (Bankr. D. Alaska 2016) ("[T]he restriction to only money paid directly to the debtor does not appear in § 523(a)(8)(A)(ii). Money paid to the education institution for a debtor's educational benefit which the debtor is required to repay to the lender also qualifies.").

Accordingly, the bankruptcy court did not err in holding that "funds received" includes funds received by SMU on behalf of Ms. Kashikar.

**2.    Ms. Kashikar's loan is not an "educational benefit."**

The bankruptcy court ruled that Ms. Kashikar's student loan is an "educational benefit" contemplated by § 523(a)(8)(A)(ii). The court's expansive reading of the statute is not supported by relevant case law or the statute itself. Accordingly, we hold that Ms. Kashikar's loan from Turnstile was not an "educational benefit" under § 523(a)(8)(A)(ii).

Christoff is instructive. In that case, we held that an "obligation to repay funds received as an educational benefit" is different from an "educational overpayment or loan" or a "qualified educational loan." We stated:

> This result [that the student loan debt was dischargeable because it did not constitute "funds received"] is bolstered by the changes made to § 523(a)(8) by Congress in BAPCPA. As noted above, the exact wording used in amended § 523(a)(8)(A)(ii) was formerly a part of § 523(a)(8). However, BAPCPA set off the "obligation to repay funds received" language from the other provisions of § 523(a)(8) in a new subsection. We agree with the bankruptcy court, that in restructuring the discharge exception in this fashion, Congress created "a separate category delinked from the phrases 'educational benefit or loan' in § 523(a)(8)(A)(i) and 'any other educational loan' in

11

§ 523(a)(8)(B)." **Put another way, "new" § 523(a)(8)(A)(ii), now standing alone, excepts from discharge only those debts that arise from "an obligation to repay funds received as an educational benefit," and must therefore be read as a separate exception to discharge as compared to that provided in § 523(a)(8)(A)(i) for a debt for an "educational overpayment or loan" made by a governmental unit or nonprofit institution or, in § 523(a)(8)(B), for a "qualified education loan."**

In re Christoff, 527 B.R. at 634 (emphasis added) (citation omitted).

We further rejected the lender's argument that "loan" can be read into § 523(a)(8)(A)(ii):

> **[The university's] arguments conflating "loan" as used in § 523(a)(8)(A)(i) and (a)(8)(B) . . . with "an obligation to repay funds received" as provided in § 523(a)(8)(A)(ii) are unconvincing.** According to [the university], "[t]here is no reason why the word 'funds' should not be interpreted in the same light that 'loans' has been interpreted in prior cases in the Ninth Circuit . . . ." In effect, [the university] argues that we should read § 523(a)(8)(A)(ii) to say "loans received" as opposed to "funds received." But this we must not do. . . . **Instead, we must presume that, in organizing the provisions of § 523(a)(8) as it did in BAPCPA, Congress intended each subsection to have a distinct function and to target different kinds of debts.**

Id. (citations omitted) (emphases added). "[Section] 523(a)(8)(A)(ii) is not a 'catch-all' provision designed to include every type of credit transaction that bestows an educational benefit on a debtor." Id. at 634 n.9.

Therefore, we hold that a "loan" is not an "educational benefit" within § 523(a)(8)(A)(ii).

**B.    The bankruptcy court erroneously declined to rule on § 523(a)(8)(A)(i).**

The bankruptcy court held that it would not rule on dischargeability under § 523(a)(8)(A)(i) because Ms. Kashikar did

12

not properly raise it in her complaint. We reluctantly conclude that the bankruptcy court should revisit the issue, although the problem stemmed from an ill-conceived complaint and a poorly drafted Pretrial Stipulation.

As the bankruptcy court accurately noted, the complaint alleged that the loan was discharged under § 523(a)(8) because it is not of the kind described in § 523(a)(8)(B). The inexplicable defect of this allegation is that the three subsections of § 523(a)(8) are stated in the disjunctive; therefore, if the loan is covered by any of the three subsections, it is not discharged (absent undue hardship). A determination that only one of the three subsections does not apply to a particular loan is useless, because if either of the other two subsections applies, the loan is not dischargeable (again, unless the debtor proves undue hardship).

Ms. Kashikar attempted to clarify matters in the Pretrial Stipulation, where she said that the issue for decision was whether the loan was dischargeable under § 523(a)(8), without identifying any particular subsection. At this point, Turnstile muddied the waters by (1) inserting a defense contending that only § 523(a)(8)(B) was at issue because the complaint only mentioned that subsection; and (2) arguing that the complaint did not adequately allege claims under the other subsections. This argument ignored the point that the Pretrial Stipulation, by its terms, superseded the complaint (and therefore cured the alleged deficiency in the complaint).

The bankruptcy court attempted to straighten out this confusion by considering Ms. Kashikar's arguments under

13

§ 523(a)(8)(A)(ii), but not under § 523(a)(8)(A)(i).  This was error.  The Pretrial Stipulation did not limit the issues to any of the subsections of § 523(a)(8).  Turnstile's attempt to preserve its argument about the adequacy of the complaint, and its contention of prejudice, are unavailing because the Pretrial Stipulation superseded the complaint.  Therefore, we must remand.

We remind the parties of two points.

First, once the question is put at issue by an appropriate party, "[u]nder § 523(a)(8), the lender has the initial burden to establish the existence of the debt and that the debt is an educational loan within the statute's parameters. . . .  The burden then shifts to the debtor to prove [undue hardship] by a preponderance of the evidence."  Roth v. Educ. Credit Mgmt. Corp. (In re Roth), 490 B.R. 908, 916–17 (9th Cir. BAP 2013) (citations omitted); see Shells v. U.S. Dep't of Educ. (In re Shells), 530 B.R. 758, 763 (Bankr. E.D. Cal. 2015); Scott v. U.S. Dep't of Educ. (In re Scott), 417 B.R. 623, 629 (Bankr. W.D. Wash. 2009).  Therefore, Turnstile will bear the burden of proving that § 523(a)(8) applied to the loan.

Second, documents included in the excerpt of record state that the program which provided Ms. Kashikar's loan was funded in whole or in part by a nonprofit corporation.  If this is true, it means that § 523(a)(8)(A)(i) covers the loan and that Ms. Kashikar's loan is not dischargeable.  But Ms. Kashikar filed a motion in limine to exclude those documents from evidence at trial; the court did not rule on that question because it held that the complaint did not adequately invoke § 523(a)(8)(A)(i).  We express no opinion concerning the admissibility of those

14

documents or any other issues bearing on § 523(a)(8)(A)(i).

Accordingly, we vacate the court's ruling regarding § 523(a)(8)(A)(i) and remand this matter to the bankruptcy court to consider whether Ms. Kashikar's loan is covered by that subsection.

## CONCLUSION

For the reasons set forth above, the bankruptcy court erred in holding that Ms. Kashikar's debt was an "educational benefit" excepted from discharge under § 523(a)(8)(A)(ii) and declining to rule on the § 523(a)(8)(A)(i) issue. Accordingly, we REVERSE IN PART the court's judgment as to § 523(a)(8)(A)(ii), VACATE the court's judgment as to § 523(a)(8)(A)(i), and REMAND this case to the bankruptcy court so that it can determine whether § 523(a)(8)(A)(i) applies.